## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MACK TYLER,** | **Civil Action No. 15-2951 (FLW)** |
| **Plaintiff,** | |
| **V.** | **OPINION** |
| **JACQUELINE CRUZ, et al.,** | |
| **Defendants.** | |

**WOLFSON, United States District Judge:**

### I.      INTRODUCTION

This matter has been opened to the Court on a motion to dismiss brought by Defendants Sandra Bryant, Evan Feibusch, Teresa McQuaide, and Bruce Booth ("State Defendants"). The Complaint in this action alleges that the State Defendants and other unserved Defendants failed to protect Plaintiff from being assaulted by a fellow patient on two separate occasions. For the reasons stated in this Opinion, the Court will grant the motion in part and deny it in part. The Court will grant the State Defendants' motion to dismiss with respect to the official capacity claims for injunctive relief as to the State Defendants, and will dismiss this claim as to all other Defendants pursuant to its screening authority under 28 U.S.C. § 1915(e)(2)(B). The Court will also dismiss without prejudice the failure to protect claims against Defendant Sandra Bryant in her personal capacity and will provide Plaintiff with leave to submit an Amended Complaint with respect to the claims against this Defendant. The motion to dismiss is otherwise denied without prejudice for the reasons stated in this Opinion.

## II.     FACTUAL BACKGROUND & PROCEDURAL HISTORY

### a.  Factual Background

The Complaint alleges that Plaintiff was found not guilty by reason of insanity of unspecified crimes and was committed to Trenton Psychiatric Hospital pursuant to *State v. Krol*, 68 N.J. 236 (1975) and N.J.S.A. 2C:4-8.  (ECF No. 1, Compl. at ¶ 11.)  The Complaint further alleges that "[a]t all relevant times and facts alleged in this complaint and thereafter plaintiff was deemed to be insane, incapacitated, incompetent, and of unsound mind."  (*Id.* at 12.)

State Defendants Feibusch and McQuaide are identified in the Complaint as "administrators" at Trenton Psychiatric Hospital.  (*Id.* at ¶¶ 18, 24-27.)   Feibusch is also identified as the "Chief Psychologist" at Trenton Psychiatric Hospital, and McQuaide is identified as the "Chief Executive Officer" at Trenton Psychiatric Hospital.  (*Id.* at ¶¶ 3-4.) State Defendant Bruce Booth, is identified as a program coordinator at Trenton Psychiatric Hospital (*id.* at ¶ 9) and appears to be a member of Plaintiff's treatment team.  (*Id.* at ¶ 13.)  Finally, State Defendant Sandra Bryant is identified only as an employee at Trenton Psychiatric Hospital.  (*Id.* at ¶ 7.)

Plaintiff alleges that in December 2012, he was admitted to Trenton Psychiatric Hospital, housed in the Lincoln Complex, and "placed under the care and treatment of the treatment team of ward ITU."[1]  (*Id.* at ¶ 13.)  On his second day on the ward, Plaintiff was allegedly attacked from behind by a patient while Plaintiff was using the payphone.  (*Id.* at ¶¶ 14-15.)   The patient, Anthony Constantino, allegedly punched Plaintiff repeatedly as the "one to one staff member," who is identified as a John Doe, "just stood there and watched." (*Id.* at ¶ 15.)  According to the

---

[1] The treatment team also allegedly included a number of Defendants who have not yet been served.

Complaint, the "one to one staff member took no reasonable steps to prevent the assault or protect Plaintiff", even though Constantino was on "one to one precautions." (*Id.* at ¶ 15.) Plaintiff further alleges that State Defendant Sandra Bryant and other John and Jane Doe Defendants assigned to the ITU also "did not take any reasonable steps to prevent the assault on Plaintiff. They just watched until the incident was over, purportedly because of their fear of Anthony Constantino." (*Id.* at ¶ 16.) Plaintiff allegedly suffered significant bodily injury from the first assault. (*Id.* at ¶ 17.)

The Complaint alleges that prior to and after the December 2012 assault, "administrators and the treatment team at Trenton Psychiatric Hospital were well aware of Anthony Constantino's propensity to commit acts of violence and assault people" and that "Anthony Constantino had assaulted approximately thirty to fifty different individuals and on numerous occasions the same persons and significantly causing bodily injuries such as broken bones, lacerations, and other injuries that required hospitalizations". (*Id.* at ¶ 18.) The Complaint further alleges that "[d]espite the numerous complaints and reports the administrators and treatment team of ITU received concerning Constantino's propensity for violence and the fear the staff members and patients alike had concerning Constantino, the administrators and treatment team of ITU" failed to ensure the safety of other patients, and "turned a blind eye to his behavior." (*Id.* at ¶¶ 19-20.) After the assaults on Plaintiff, the treatment team allegedly did not assess Constantino's need for treatment or security, and left unqualified personnel to deal with these issues. (*Id.* at ¶ 21.) The Complaint further alleges that treatment team failed to inquire into the essential facts that were necessary to make a professional judgment concerning Constantino's treatment and security. (*See id.* at ¶ 22.)

Approximately five months later, in May 2013, Plaintiff was assaulted again by Constantino in the community bathroom.  (*Id.* at ¶ 23.)   According to the Complaint, the assigned precaution staff member who was assigned to Constantino failed to check the bathroom to make sure that no one was inside.  (*Id.*)  Plaintiff was allegedly attacked and repeatedly punched by Constantino, and the staff member assigned to Constantino failed to intervene, leaving Plaintiff to protect himself.[2]  (*Id.*)   The May 2013 assault also resulted in serious physical and emotional injuries to Plaintiff.  (*Id.* at ¶¶ 30-31.)

With respect to the second assault, the Complaint alleges that the administrative Defendants, including State Defendants Feibusch and McQuaide, had a duty to ensure his safety and had actual knowledge of a foreseeable and imminent risk of harm to Plaintiff, but nevertheless failed to take any action to prevent a second assault.  (*Id.* at ¶¶ 24-26.)  Plaintiff also alleges the administrative Defendants failed to follow their own policies, rules, and regulations regarding known safety issues, but does not explain what these policies, rules, and regulations entail.  (*See id.* at ¶¶ 25-28.)  The Complaint also alleges that Plaintiff was not closely monitored to ensure his safety even though Defendants were aware that Constantino had a propensity to attack patients.  (*Id.* at ¶ 29.)  The Complaint additionally alleges that Defendants have mismanaged Trenton Psychiatric Hospital and that there are "systemic deficiencies and understaffing," which makes the facility unsafe.  (*Id.* at ¶ 32.)

The Complaint contains a single count for relief, which is brought pursuant to the Fourteenth Amendment and is premised on the Defendants alleged failure to protect Plaintiff from a known risk of substantial harm.  (*Id.* at ¶¶ 35-39.)  Plaintiff seeks a declaration that the

---

[2]  This staff member is identified in the Complaint as "Mohumad" but is not named as a Defendant.  (*Id.* at ¶ 23.)

Defendants violated his Fourteenth Amendment rights, an injunction requiring Defendants and Trenton Psychiatric Hospital to train staff and follow their internal rules, regulations, and policies with respect to patient safety, and an award of compensatory damages for his injuries. (*Id.* at ¶¶ 40-45.)

### b.  Procedural History

Plaintiff's Complaint is dated April 20, 2015 and was docketed on April 27, 2015.  (ECF No. 1, Compl. at 10.)  The case was originally assigned to the Honorable Peter G. Sheridan.  On May 5, 2015, the Court granted Plaintiff's application to proceed *in forma pauperis* and directed the Clerk to file the Complaint.  (ECF No. 2.)  The matter was subsequently transferred to the undersigned.  (ECF No. 5.)  Summons issued and was returned executed by State Defendants Booth, Bryant, Fiebusch, and McQuaide.[3]  (ECF No. 6.)  The State Defendants subsequently moved to dismiss the Complaint, and Plaintiff failed to respond to the motion. (ECF No. 12.) The Court issued an Order directing Plaintiff to notify the Court as to whether he intended to proceed with the instant action.  (ECF No. 13.)  Plaintiff responded in affirmative and submitted his opposition to the State Defendants' motion to dismiss.  (ECF No. 14.)  The State Defendants submitted their reply brief.  (ECF No. 15.)  The matter is now fully briefed and ready for disposition.

### III.   STANDARDS OF REVIEW

Defendants have moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  "Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim."  *In re Schering Plough Corp. Intron/Temodar*

---

[3] Summons was returned unexecuted as to Defendants Lee Acuff, Maria Champagne, Jacqueline Cruz, Karen Johnson, and Lawrence Rossi.  (*See* ECF No. 7.)

*Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir.2007).  In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *In re Schering Plough Corp.*, 678 F.3d at 243.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. CIV. 11–4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012). In considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In ruling on a motion to dismiss, Courts are required to liberally construe pleadings drafted by *pro se* parties.  *See Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers."  *Id.* Nevertheless, pro se litigants must still allege facts, which if taken as true, will suggest the

required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). Liberal construction also does not require the Court to credit a *pro se* plaintiff's "bald assertions" or "legal conclusions." *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## IV.   ANALYSIS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at l aw, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Here, Plaintiff alleges that the State Defendants are liable under § 1983 for failing to protect him from two assaults by a patient with a history of violent behavior. Defendants raise three arguments for dismissal. First, they argue that Plaintiff lacks standing to seek injunctive relief against Defendants in their official capacities. Second, they argue that his claims regarding

the December 2012 assault are time barred.  And third, they argue that he fails to state a plausible claim for relief under Fed. R. Civ. P. 8 as to the May 2013 assault.  The Court addresses each argument separately.

### a.  Claims for Injunctive Relief

In his prayer for relief, Plaintiff asks the Court to "[i]ssue an injunction requiring the Defendants and [Trenton State Psychiatric Hospital] to properly train and follow their internal rules, regulations and hospital policies to ensure . . . the patients' and state officials' safety." (ECF No. 1, Compl. at ¶ 42.)  Defendants argue that Plaintiff lacks standing to bring official capacity claims for injunctive relief because he was released from Trenton State Psychiatric Hospital prior to commencing this litigation.

The Court agrees that Plaintiff lacks standing to bring his claim for prospective injunctive relief to remedy past misconduct, and that his Complaint does not show that that he faces a real and immediate threat of future injury arising out of the challenged conduct.  *See Worthy v. N.J. State Parole Bd.*, 184 F. App'x 262, 265–66 (3d Cir. 2006) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 n. 7 (1983).  The Complaint clearly states that Plaintiff resides at a private address and that he "was" previously a psychiatric patient at Trenton Psychiatric Hospital.  Even if he had been confined at Trenton Psychiatric Hospital at the time he filed his Complaint, his claims for injunctive relief would generally become moot upon his release. [4]  *See Cobb v. Yost,*

---

[4] Furthermore, without formally proceeding as a representative of a class, *see, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 553 (1974), Plaintiff also cannot seek relief for third parties, such as other patients at Trenton Psychiatric Hospital. *See Worthy*, 184 F. App'x at 265–66 (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (holding that a plaintiff "cannot rest his claim on the rights or interests of third parties" or merely assert a harm that is a generalized grievance "shared in substantially equal measure by all or a large class of citizens").   Here, amending Plaintiff's complaint to bring his claim for injunctive relief as a class action would be futile, because at the time he filed the Complaint, he was no longer a member of the class he seeks to represent.  *See id.* (citing *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216 (1974)).

342 F. App'x 858, 859 (3d Cir. 2009) ("Generally an inmate's claim for injunctive and declaratory relief becomes moot on his release from prison.")(citing *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003); *Abdul–Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir.1993)).

Plaintiff also appears to concede in his brief that he is no longer hospitalized at Trenton Psychiatric Hospital. He argues, however, that dismissal of his claims for injunctive relief are premature and states that "he has a permanent mental condition . . . and is likely to be re-hospitalized as a result of his psychiatric condition and placed back under the care or custody of the defendants, as his psychiatric history demonstrates that he was previously re-hospitalized at [Trenton Psychiatric Hospital] on multiple admissions." (ECF No 14, Pl. Br. at 1.) As noted by Defendants, Plaintiff may not amend his complaint through his opposition brief, and these new facts may not be considered by the Court on the instant motion to dismiss. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied*, 470 U.S. 1054 (1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

The Court notes that Plaintiff argument appears to rely on the "capable of repetition" doctrine, which provides a narrow exception to the live controversy requirement. As explained by the Third Circuit in *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993), the "capable of repetition" doctrine . . . is limited to cases presenting two elements: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again." (citing *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). Here, the Court finds

9

that even if it considered the additional facts alleged in Plaintiff's brief, Plaintiff has not shown a reasonable likelihood that he will be subject to the same action again.  Rather, he simply speculates that his prior history of mental illness and hospitalization makes it more likely that he could be re-hospitalized at Trenton Psychiatric Hospital at some point.  As such, the Court will not provide Plaintiff with leave to amend his Complaint to add claims for injunctive relief based on the facts alleged in his brief.  The Court will, however, dismiss Plaintiff's official capacity claims for injunctive relief <u>without prejudice as to all Defendants.</u>[5]  To the extent he is re-hospitalized at Trenton Psychiatric Hospital during the pendency of this litigation, he may seek leave to amend his Complaint to add claims for injunctive relief.  The Court next considers the State Defendants remaining arguments for dismissal of the personal capacity claims for damages.

### b.  December 2012 Assault

Defendants next argue that Plaintiff's claims related to the December 2012 assault are time barred under the two-year statute of limitations for claims brought pursuant to 42 U.S.C. § 1983.  *See, e.g., Montgomery v. DeSimone*, 159 F.3d 120, 126 & n. 4 (3d Cir. 1998); *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989) (finding that New Jersey's two-year limitations period on personal injury actions, N.J.S.A. § 2A:14–2, governs claims under section 1983).  For claims arising under 42 U.S.C. §1983, state law generally governs the statute of limitations and whether the limitations period should be tolled.[6]  *See Kreider v. Philhaven*

---

[5] Because the Court lacks jurisdiction over Plaintiff's claims for injunctive relief, it will grant the motion to dismiss as to the State Defendants, and dismiss the claims for injunctive relief as to <u>all remaining Defendants</u> pursuant to its screening authority under 28 U.S.C. § 1915(e)(2)(B).

[6] When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine. *See Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000). Under federal law, equitable tolling is appropriate in three general scenarios:(1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

*Adolescent Inpatient Treatment Ctr.*, 592 F. App'x 59, 60 (3d Cir. 2014) (citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  Federal law governs the date of accrual.  *Id.* (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  A claim accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citations omitted)

Here, Plaintiff's claim related to the December 2012 assault began to accrue immediately. New Jersey statutes, however, set forth certain bases for "statutory tolling." *See, e.g.*, N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable).  New Jersey law also permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. *See Miranda v. Police Dep't of Atl. City*, No. CIV. 08-2013(JBS), 2008 WL 2235601, at *3 (D.N.J. May 29, 2008) (citing *Freeman v. State*, 347 N.J. Super. 11, 31 (App. Div.) *certif. denied*, 172 N.J. 178 (2002)).

At issue here is New Jersey's tolling provision for mental disability.  Under New Jersey law, statutes of limitations are tolled for any person with "a mental disability that prevents the person from understanding his legal rights or commencing a legal action at the time the cause of action or right or title accrues," until such time as that person regains the mental capacity to pursue his rights.  N.J.S.A. § 2A:14-21; *see also Nicolas v. Ocean Plaza Condo Ass'n*, 73 F.

---

*Id.* n. 9. The Court of Appeals for the Third Circuit has held that "equitable tolling is extraordinary, and we extend it 'only sparingly.'" *Gunset v. Marsh*, No. CIV.A. L2-4735 DMC, 2013 WL 706195, at *3 (D.N.J. Feb. 25, 2013) (citing *Santos v. United States*, 559 F.3d 189, 197 (3d Cir. 2009) (citations omitted)).

App'x. 537, 541 (3d Cir. 2003); *Smith v. Twp. of Warren*, No. CV 14-7178-BRM-LHG, 2016 WL 7409952, at *16 (D.N.J. Dec. 22, 2016).

As explained by the Third Circuit, "New Jersey courts have held that to be 'insane' within the meaning of the statute, a plaintiff need not suffer from a mental illness that requires commitment or institutionalization .... Nonetheless, the plaintiff must suffer from 'such a condition of mental derangement as actually prevents the sufferer from understanding his legal rights or instituting legal action.'" *Nicolas v. Ocean Plaza Condo. Ass'n, Inc.*, 73 F. App'x 537, 541 (3d Cir. 2003) (finding that a genuine issue of material fact exists as to whether Plaintiff was "insane" for purposes of tolling the New Jersey statute of limitations applicable to her LAD claim) (citing *Todish v. CIGNA Corp.*, 206 F.3d 303, 305-306 (3d Cir. 2000) (citations omitted)).

Here, Plaintiff's Complaint states that he was a psychiatric patient confined after being found not guilty by reason of insanity, and committed by the Superior Court of New Jersey pursuant to *State v. Krol*, 68 N.J. 236 (1975) and N.J.S.A. 2C:4-8, as a *Krol* status patient. (ECF No. 1, Compl. at ¶ 11.)  Plaintiff further states "[a]t all relevant times and facts alleged in this complaint and thereafter plaintiff was deemed to be insane, incapacitated, incompetent, and of unsound mind."  (*Id.* at ¶ 12.)  In their reply brief, State Defendants contend that Plaintiff's allegations are no more than legal conclusions and not entitled to the assumption of truth.  (ECF No. 15, Reply at 7.)  The Court disagrees.  Although Plaintiff's allegations of mental incompetency are not detailed, his status as a *Krol* patient at the time of the assault coupled with his allegations of continued incompetence are sufficient to suggest at this early stage of the proceedings that he may be entitled to statutory tolling.  *See, e.g.*, *Pratt v. Ann Klein Forensic Ctr.*, No. CV 15-5779, 2016 WL 660664, at *5 (D.N.J. Feb. 18, 2016) (declining to dismiss negligence claim on statute of limitations grounds where Complaint, viewed in the light most

favorable to Plaintiff, alleged that Plaintiff's disability was severe enough to toll the statute of limitations); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) ("On a motion to dismiss, we must accept as true the allegation in the complaint that appellant has been non compos mentis since 1955. Given that assumed fact, appellant's claim under 42 U.S.C., Section 1983 is not barred by the New Jersey statute of limitations since, under New Jersey law, the statute does not run so long as the potential plaintiff is insane." (citing N.J.S.A. 2A:14-21). The Court therefore declines to find on a motion to dismiss that the allegations with respect to the December 2012 assault are barred by the applicable statute of limitations, and Defendants' motion to dismiss is denied without prejudice on this ground.

   c. **Failure to State a Claim under Fed. R. Civ. P. 8**

   The State Defendants next argue that Plaintiff's Complaint is conclusory and fails to allege sufficient facts to suggest that any of the State Defendants violated Plaintiff's Fourteenth Amendment right to reasonable safety.  The Court begins by providing the standards applicable to failure to protect claims brought by involuntarily committed patients such as Plaintiff.   "State officials generally do not have an affirmative duty to protect citizens not in their custody from injuries inflicted upon them by a third party." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1144 (3d Cir. 1990) (citing *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989)). "Once the state restrains an individual's liberty, rendering that individual unable to act for himself, however, the state does acquire an affirmative duty to protect." *Id.* (citing *DeShaney*, 109 S.Ct. at 1005-06).  As such, for involuntarily committed patients, the substantive due process clause of the Fourteenth Amendment guarantees "the right to personal security," *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982), and the right to conditions of

reasonable safety.[7]   *Id.* at 324.  In addition to reasonable safety and security, involuntarily

committed individuals retain substantive liberty interests in adequate food, shelter, clothing, and

medical care, *Youngberg*, 457 U.S. at 315, as well freedom of movement and freedom from

undue restraint.  *id.* at 317–19; *see also Fladger v. Trenton Psychiatric E. 2 Treatment Team*, No.

CIV.A. 12-5982 FLW, 2013 WL 3271018, at *5 (D.N.J. June 27, 2013) (explaining same).

     Although the Court in *Youngberg* determined that an involuntary committed individual

"retains liberty interests in safety and freedom from bodily restraint" it found that these interests

are "not absolute" and emphasized that the two interest conflict to some extent.  457 U.S. at 319-

320.  As explained by the Court, "[i]n operating an institution. . ., there are occasions in which it

is necessary for the State to restrain the movement of residents—for example, to protect them as

well as others from violence. . . . And an institution cannot protect its residents from all danger of

violence if it is to permit them to have any freedom of movement.  The question then is not

simply whether a liberty interest has been infringed but whether the extent or nature of the

restraint or lack of absolute safety is such as to violate due process."  *Youngberg*, 457 U.S. at

320.

     The Court then adopted the standard for failure to protect that was articulated by then-

Chief Judge Seitz of the Third Circuit, in his concurring opinion in the case below:

> We think the standard articulated by Chief Judge Seitz affords the
> necessary guidance and reflects the proper balance between the
> legitimate interests of the State and the rights of the involuntarily
> committed to reasonable conditions of safety and freedom from
> unreasonable restraints. He would have held that "the Constitution
> only requires that the courts make certain that professional
> judgment in fact was exercised. It is not appropriate for the courts
> to specify which of several professionally acceptable choices
> should have been made." [*Romeo v. Youngberg*, 644 F.2d 147, 178

---

[7] At issue in *Youngberg* were claims for safe conditions, freedom from unnecessary restraint, and
adequate treatment for Plaintiff's intellectual disability.  *See Youngberg*, 457 U.S. at 315–16.

> (3d Cir. 1980), *vacated*, 457 U.S. 307 (1982)]. Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish. *Cf. Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). At the same time, this standard is lower than the "compelling" or "substantial" necessity tests the Court of Appeals would require a State to meet to justify use of restraints or conditions of less than absolute safety. We think this requirement would place an undue burden on the administration of institutions such as Pennhurst and also would restrict unnecessarily the exercise of professional judgment as to the needs of residents.

*Youngberg*, 457 U.S. at 321–22.  In interpreting the standard in *Youngberg*, the Third Circuit has

emphasized that the professional judgment standard is not equivalent to negligence.  *See*

*Strackhouse*, 920 F.2d at 1146–47 (citing *Daniels v. Williams*, 474 U.S. 327 (1986), for the

proposition that the professional judgment standard requires a plaintiff to prove more than simple

negligence).  Instead, "[p]rofessional judgment, like recklessness and gross negligence, generally

falls somewhere between simple negligence and intentional misconduct."  *Bullock v. Cabasa*,

No. CIV. 10-1412 RBK/KMW, 2014 WL 5286613, at *6 (D.N.J. Oct. 15, 2014) (quoting

*Strackhouse*, 920 F.2d at1146) (internal quotations omitted).

    In addition, as explained by the Third Circuit, "[t]he *Youngberg* Court did not apply the

professional judgment standard to all those charged with caring for such individuals. The Court

applied the standard only to "professional decisionmakers," defined as:

> [P]erson[s] competent, whether by education, training or experience, to make the particular decision at issue. Long-term treatment decisions normally should be made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the retarded. Of course, day-to-day decisions regarding care-including decisions that must be made without delay-necessarily will be made in many instances by employees without formal training but who are subject to the supervision of qualified persons.

*Strackhouse* 920 F.2d at 1147 (citing *Youngberg*, 457 U.S. at 323 n. 30). Thus, nonprofessional

employees who provide care for involuntarily committed individuals are subject to the deliberate

indifference standard. *Id.* "The deliberate indifference standard requires a showing, in cases alleging that a state actor failed to provide adequate protection, that the state actor was recklessly indifferent, grossly negligent, or deliberately or intentionally indifferent." *Id.* at 1145 (citations omitted); *see also Brandt v. Rossi*, No. CIV.A. 11-2627 FLW, 2012 WL 359736, at *5 (D.N.J. Feb. 2, 2012) (explaining same).

Here, the claims against the State Defendants are based upon their alleged failures to protect Plaintiff from two assaults by a patient with a history of violent behavior. Because the State Defendants have argued that Plaintiff's allegations arising from the December 2012 assault are time barred, they confine their analysis of the Complaint to allegations surrounding the 2013 assault and leave out crucial facts provided in the section of the Complaint that is devoted to the December 2012 assault. With respect to the May 2013 assault, they contend that Plaintiff's Complaint sets forth a "formulaic recitation of a failure to protect claim" (ECF No. 12-4, Moving Br. at 14-15.) and contend that Plaintiff's allegations are conclusory and are not entitled to the presumption of truth under *Iqbal*. (*Id.* at 15-17.) The State Defendants further complain that the Complaint does not provide any facts indicating that the State Defendant "were personally involved, observed or contributed to [the May 2013] assault," and that the Complaint fails to "set forth specific professional decisions" made by the State Defendants that contributed to the alleged harm. (*Id.* at 17; ECF No. 15, Reply at 5-6.)

This Court's analysis of the sufficiency of Plaintiff's failure to protect claims is guided by the leading Third Circuit decision interpreting *Youngberg*. *Strain v. Strackhouse*, 920 F.2d 1135 (3rd Cir. 1990), involved an involuntarily committed plaintiff with an intellectual disability who had disappeared from his ward on two occasions. *Id.* at 1140-41. After his first disappearance on February 3, 1986, he was discovered with injuries consistent with sexual assault. *Id.* at 1141.

Twelve days later, the plaintiff disappeared from the ward a second time and was again discovered with injuries consistent with sexual assault.  *Id.* at 1141.  The Third Circuit determined that the first disappearance amounted to negligence at best, as the plaintiff had resided on the ward with the same level of supervision for 10 years without incident.  (*Id.* at 1143-44.)  The court, however, reversed the District Court's grant of summary judgment to the professional defendants with respect to the second incident because they failed to take any additional precautions to protect the plaintiff after the February 3 incident. *See id* at 1140-41.[8] The court explained the test for liability as follows:

> All professional members of the staff are not, *ipso facto*, liable solely because one or more of their colleagues failed to exercise professional judgment on [the plaintiff's] behalf. Only those defendants whose inactions or actions personally caused [the plaintiff's] injury may be held liable under § 1983. In more concrete terms, liability may only be imposed on those defendants who had the power and the responsibility to protect [Plaintiff's] safety after February 3, but who failed to do so.

*Strackhouse*, 920 F.2d at 1147.  The Court also explained that by virtue of "[h]aving subjected [the plaintiff] to their custody, the [professional] staff assumed an affirmative duty to protect [the plaintiff] from threats to his safety, including harm from third parties or even from [the plaintiff] himself. *Id.*) (citing *DeShaney*, 109 S.Ct. at 1005).  "Given this affirmative duty, [the plaintiff] need not show that defendants inflicted or covered up his injuries.  To survive summary judgment, [the plaintiff] need only raise a genuine issue of material fact regarding the causal connection between an individual defendant's actions and [his] injury."  *Id.* (citing *See Duchesne v. Sugarman*, 566 F.2d 817, 830-31 (2d Cir.1977)).

---

[8] The professional staff failed to transfer the plaintiff to another ward, failed to increase the level of his supervision, failed to report the incident to the state police as required by its policy manual, and failed to isolate him from a staff member who appeared to be the leading suspect in the February 3 incident.  *Id.*

In the instant action, three of the four State Defendants appear to qualify as "professionals" under the *Youngberg* definition. *See Strackhouse*, 920 F.2d at 1127; *Youngberg*, 457 U.S. at 323 n. 30. Defendants Feibusch and McQuaide are identified in the Complaint as "administrators" at Trenton Psychiatric Hospital. (*Id.* at ¶¶ 18, 24-27.) Feibusch is also identified as the "Chief Psychologist" at Trenton Psychiatric Hospital, and McQuaide is identified as the "Chief Executive Officer" at Trenton Psychiatric Hospital. (*Id.* at ¶¶ 3-4.) Defendant Booth is identified as a program coordinator at Trenton Psychiatric Hospital (*id.* at ¶ 9) and is also a member of the treatment team of the ITU where the incident occurred. (*See id.* at ¶ 13.)

The Complaint alleges that, prior to the December 2012 assault on Plaintiff, the administrators, including Defendants Feibusch and McQuaide, and the treatment team, which includes Booth, knew that Constantino had assaulted and 30-50 individuals, causing significant injuries and hospitalizations. (ECF No. 1, Compl. at ¶ 18.) Despite this numerous complaints and reports concerning Constantino's propensity for violence, the administrators and treatment team allegedly failed to take action to protect other patients from Constantino. (*Id.* at ¶¶19-20.) It is notable that, at the time of the December 2012 incident, Constantino was allegedly on "one-to-one precautions" and had been assigned a one-to-one precautions staff member. (ECF No. 1, Compl. at ¶ 15.) Purportedly, Constantino was placed on this status and a staff member was assigned to watch him precisely because he presented a potential threat to patients and staff. At the time of the February 2013 incident, Constantino also had a one-to-one precautions staff member assigned to him. (*Id.* at ¶23.) The assignment of a staff member to Constantino, however, did not prevent him from assaulting Plaintiff on the two occasions described in the

Complaint.[9]  Plaintiff further alleges that administrative Defendants, including Feibusch and McQuaide, failed to follow their own internal policies, rules, and regulations, concerning the safety threat presented by Constantino, and that Plaintiff was not provided with any additional safety monitoring after the first assault.  (*Id.* at ¶¶ 24-29.)

From these facts, it is plausible that State Defendants Feibusch, McQuaide, and Booth had the "power and the responsibility to protect [Plaintiff's] safety" at Trenton Psychiatric Hospital, but failed to do so.  *See Strackhouse*, 920 F.2d at 1147.  As explained by the Third Circuit in *Strackhouse*, "the failure to prevent a 'pattern of attacks, injuries, or violent behavior' is actionable" under the professional judgment standard.  *See Strackhouse*, 920 F.2d at 1143 (citing *Youngberg*, 644 F.2d at 163).  The Court agrees that Plaintiff's Complaint does not provide "specific professional decisions" made by those State Defendants who could be characterized as professionals.[10]  The Complaint appears to allege a more general failure to act by the professional staff, including State Defendants Feibusch, McQuaide, and Booth, and such inaction can form the basis for a failure to protect claim.  *See Strackhouse*, 920 F.2d at 1147.

The omission of specific professional decisions attributable to the State Defendants is not fatal to his claims at this early stage.  In *Strackhouse*, the court specifically noted that the

---

[9] In the first incident, the assigned staff member allegedly "stood there and watched" as Constantino assaulted Plaintiff from behind as Plaintiff used the telephone.  In the second incident, the staff member assigned to Constantino failed to check the bathroom for other occupants, which provided Constantino with the opportunity to assault Plaintiff.

[10] From the facts alleged in the Complaint, a central issue appears to be whether professional staff at Trenton Psychiatric Hospital adequately responded to the safety threat posed by Constantino, given his alleged institutional history of assaulting 30-50 other individuals prior to his assault on Plaintiff.  Following Constantino's December 2012 assault on Plaintiff, the crucial issues are whether professional staff substantially departed from accepted professional judgment, practice, or standards and/or violated their own policies and procedures by permitting Constantino to remain at the same level of supervision and on the same ward as Plaintiff in light of his previous assault on Plaintiff.

plaintiff "casts a broad net over potentially responsible parties. Not all fourteen professional defendants had the authority or the responsibility to see that Shaw received enhanced protection after February 3." 920 F.2d at 1147–48.  Like the plaintiff in *Strackhouse*, the Plaintiff in this action casts a wide net over potentially responsible professional staff and does not (or cannot without discovery) identify who made the relevant professional decisions that allegedly contributed to the two assaults.  Even at the summary judgment stage, the Third Circuit found that the plaintiff in *Strackhouse* "should not be penalized . . . for failing to identify precisely which defendant or defendants dropped the ball." As the court explained:  "Identification of a responsible party or parties within a complex, overlapping chain of command is often a difficult task. Numerous variables must be factored into the analysis: the amount of information known to various defendants; the scope of their duties and authority; their training and expertise; the allocation of decisionmaking power within the organization; reporting and review relationships; established and formal decisionmaking procedures; and informal custom and practice." *See Strackhouse*, 920 F.2d at 1149–50.  Plaintiff in this action is at an earlier stage of the proceedings than the Plaintiff was in *Strackhouse*.  As such, the Court will not penalize Plaintiff for failing to identify the specific decisions by State Defendants that allegedly contributed to the relevant assaults.

For the reasons stated above, the Court finds that Plaintiff has sufficiently alleged a Fourteenth Amendment claim for failure to protect against State Defendants Feibusch, McQuaide, and Booth in connection with the December 2012 and May 2013 assaults, and the

Court will deny without prejudice the State Defendants' motion to dismiss with respect to these Defendants.[11]

The Court, however, will dismiss without prejudice the failure to protect claims against State Defendant Sandra Bryant. The Complaint alleges that Bryant, who is identified only as an employee at Trenton Psychiatric Hospital (ECF No. 1, Compl. at ¶ 7), was assigned to the ITU and was a witness to the December 2012 assault. According to the Complaint, Defendant Bryant and other John and Jane Does present "did not take any reasonable steps to prevent the assault on [P]laintiff. They just watched until the incident was over, purportedly because of their fear of Anthony Constantino." (*Id.* at ¶ 16.) Without knowing her job title and duties, the allegation that Bryant "did not take any reasonable steps to prevent the [December 2012] assault" is conclusory at best and not entitled to the presumption of truth. To the extent Defendant Bryant is a member of the professional staff at Trenton Psychiatric Hospital, the Court cannot determine from the facts alleged in the Complaint whether she exercised professional judgment in failing to prevent (or intervene) in the December 2012 assault on Plaintiff. Furthermore, to the extent Bryant is a member of the non-professional staff, the Complaint contains insufficient facts to determine whether she had a duty to intervene and/or may be liable for failing to prevent or intervene in the assault.[12] *See generally Bistrian v. Levi*, 696 F.3d 252, 366-67 (3d Cir. 2012) (analyzing Fourteenth Amendment claims of failure to intervene based on attacks occurring against a pre-trial detainee). As the Third Circuit explained in *Bistrian v. Levi*, "a corrections

---

[11] To the extent discovery reveals that Plaintiff is seeking to hold one or more of the State Defendants responsible for the professional decisions of their colleagues or subordinates under a theory of *respondeat superior*, those Defendants may move for summary judgment at the appropriate time.

[12] Without knowing more about Bryant's duties at Trenton Psychiatric Hospital, the Court cannot determine whether the Fourteenth Amendment analysis applicable to police and corrections officers could apply to Bryant.

officer who fails to intervene when other officers are beating an inmate may be liable on a failure-to-protect claim if the officer had 'a realistic and reasonable opportunity to intervene' and 'simply refused to do so.'" *Id*. at 371.  Here, the Complaint suggests that Bryant failed to intervene in the assault "purportedly because of [her] fear of Constantino" but does not provide facts suggesting that she had a duty to intervene and/or a realistic and reasonable opportunity to intervene.  Because the Complaint provides insufficient facts to suggest that Defendant Bryant is liable for failing to protect Plaintiff under either the professional judgment or deliberate indifference standards, the Court will dismiss without prejudice the Complaint as to this Defendant.  Plaintiff may submit an Amended Complaint within 45 days to the extent he has facts that would cure the deficiencies in his claims with respect to Defendant Bryant.

## V.      CONCLUSION

For the reasons explained in this Opinion, the State Defendants' motion to dismiss the official capacity claims for injunctive relief is granted.  The Court will dismiss without prejudice the claims for injunctive relief as to all remaining Defendants pursuant to its screening authority under 28 U.S.C. § 1915(e)(2)(B).  The Court will also dismiss without prejudice the personal capacity claims for damages as to State Defendant Bryant; Plaintiff may submit an Amended Complaint within 45 days that cures the deficiencies in the Complaint with respect to this Defendant.  The motion to dismiss is otherwise denied without prejudice for the reasons stated in this Opinion.  An appropriate Order follows.

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge

Date: January 13, 2017

22