Case 3:15-cv-02951-FLW-TJB Document 45-15 Filed 04/12/18 Page 1 of 7 PageID: 335

Lexis Advance®
Research

---

Document:Wood v. Main, 2008 U.S. Dist. LEXIS 62216

---

# Wood v. Main, 2008 U.S. Dist. LEXIS 62216

**Copy Citation**

United States District Court for the District of New Jersey

August 13, 2008, Decided; August 13, 2008, Filed

Civil No. 05-1448 (RMB); [Docket No. 53

**Reporter**

**2008 U.S. Dist. LEXIS 62216 \***

PHILLIP WOOD, Plaintiff, v. JOHN MAIN and ROBERT ROTH, M.D., Defendants.

**Notice:** NOT FOR PUBLICATION

**Prior History:** Wood v. Main, 2007 U.S. Dist. LEXIS 97900 (D.N.J., June 26, 2007)

## Core Terms

summary judgment, patient, assault, professional judgment, deliberate indifference, allegations, fail to protect, genuine, rights, vague, interrogatory, interaction, attacked, opposing, parties

**Counsel:** [*1] Abigail Marie Green ▾, William M. Tambusi ▾, Brown & Connery LLP ▾, Westmont, NJ, Attorneys for Plaintiff.

David L. DaCosta ▾, Judith A. Andrejko ▾, Office of the NJ Attorney General, Department of Law & Public Safety, Trenton, NJ, Attorneys for Defendants.

**Judges:** RENEE MARIE BUMB ▾, UNITED STATES DISTRICT JUDGE.

**Opinion by:** RENEE MARIE BUMB ▼

## Opinion

**BUMB,** United States District Judge:

### INTRODUCTION

This matter comes before the Court on a motion to dismiss the complaint for failure to state a claim or, alternatively, for summary judgment, brought by Defendants. Plaintiff, Phillip Wood, is currently an inmate at New Jersey State Prison in Trenton, New Jersey. At the time of the events alleged in the Amended Complaint, Plaintiff was a patient at the Ann Klein Forensic Center ("AKFC"). Defendant Dr. Robert Roth is a state psychiatrist at AKFC who treated Plaintiff during the relevant time period. Defendant John Main is the Chief Executive Officer at AKFC.

In his Amended Complaint, Plaintiff alleges that Defendants failed to provide adequate protection of his health and welfare while housed at AKFC. He alleges civil rights claims under § 1983 and the New Jersey Constitution as well as a state law negligence claim. Defendants now move **[*2]** for dismissal or, alternatively, summary judgment.

### FACTS

Plaintiff was involuntarily civilly committed in 1981 as a Krol patient after being found not guilty by reason of insanity on charges of murder and arson. (Pl. Opp. at 2). On March 15, 2004, he was temporarily transferred from Ancora Psychiatric Hospital to AKFC due to his aggressive behavior. (Def. SOF P 2).

While at AKFC, Plaintiff was treated on several occasions by Dr. Roth, the psychiatrist in charge of the Intensive Treatment Unit. (Roth Dep. 36:25-37:1; 38:2-5). Dr. Roth explained that although he did not have one-on-one sessions with Plaintiff in his office, Plaintiff "was seen on team rounds, usually as many as 3 times a week…". (*Id.* 38:13-19). Based on his treatment of Plaintiff, Dr. Roth has described Plaintiff as "a violent, assaultive, uncooperative patient with a well-documented diagnosis of paranoid schizophrenia…" (Roth Aff. P 3).

On March 24, 2004, Plaintiff made a complaint about Medical Security Officer Russell Fireall. Plaintiff claimed that earlier that day, at about 5:20 p.m., Officer Fireall was verbally abusive to Plaintiff during meal time and threw away an extra tray of food that Plaintiff wanted. (Pl. Opp. **[*3]** at 3; Def SOF P 3; Fireall Dep. 11:19-20; AKFC Investigation Report, Main Aff., Ex. A at PW11230-237). As a result of this incident, Officer Fireall was transferred from Plaintiff's unit the next day and placed as a floater. (Fireall Dep. 12:5-8).

Two days later, on March 26, 2004, Plaintiff was assaulted by Brandon Harvey, another patient at AKFC. (Pl. Opp. at 3; Def SOF P 4; AKFC Incident Report, Main Aff., Ex. A at PW11204-211). Apparently, Harvey attacked Plaintiff suddenly and without warning, punching Plaintiff in the eye and face and causing him to lose consciousness and fall to the ground. (Pl. Opp. at 3-4; Def SOF P 4).

On March 9, 2005, Plaintiff filed a pro se civil rights complaint against Dr. Roth and John Main, C.E.O. of AKFC. In this complaint, Plaintiff alleged that John Main "failed to properly monitor the conduct of the treating psychiatrist responsible for subjecting me to physical injury." (Compl. P 4(b)). Plaintiff also alleged that Dr. Roth "failed to be responsible for my safety within the psychiatric facility because of physical harm." (*Id.* P 4(c)).

On April 1, 2008, Plaintiff, now represented by counsel, filed an Amended Complaint which clarified Plaintiff's cause **[*4]** of action. (*See* Am. Compl.). Specifically, in the Amended Complaint, Plaintiff claims that he was assaulted on March 26, 2004, by Brandon Harvey, another patient at AKFC. Plaintiff alleges that he "feels that the attack was set up by officers working at AKFC because he entered into a disagreement with an officer a few days prior to the assault[,]" referring to the March 24th incident with Officer Fireall. (*Id.* PP 15-16). The Amended Complaint further states that "[a]s a result of this incident [with Officer Fireall], Officer Fireall, along with Officer Hopkins and Officer Terrence Ingram incited patients Brandon Harvey and William Randall to assault Plaintiff." (*Id.* P 17). Plaintiff claims that although

he "notified Defendants Roth and Main [as well as the Human Services Police] that he was worried he was going to be attacked prior to the [March 26th] incident[,]" Plaintiff "was not provided with additional protection." (Id. PP 18-20).

Defendants have moved for dismissal or, alternatively, summary judgment. Plaintiff does not oppose the motion as to Defendant John Main, in essence conceding that summary judgment should be entered. (Pl. Opp. at 2, n.1). Accordingly, the Court will grant **[*5]** Defendants' motion as to Defendant John Main. Plaintiff has also conceded his state tort claim, recognizing that the statute of limitations for filing the requisite tort claim notice has passed. (*Id.* at 14). Thus, the Court will dismiss Plaintiff's state tort claim, as well.

## STANDARD OF REVIEW

Defendants have moved to dismiss the Complaint in accordance with Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment in accordance with Fed. R. Civ. P. 56(c). Since both parties have relied on papers outside the pleadings to support their arguments, the Court will consider Defendants' motion as one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6) (when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment").

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hersh v. Allen Products Co.,* 789 F.2d 230, 232 (3d Cir. 1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). **[*6]** "At the summary judgment stage the judge's function is not … to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "In making this determination, a court must make all reasonable inferences in favor of the non-movant." *Oscar Mayer Corp. v. Mincing Trading Corp.,* 744 F. Supp. 79, 81 (D.N.J. 1990) (*citing Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n.2 (3d Cir. 1983)). However, "the party opposing summary judgment 'may not rest upon the mere allegations or denials of the…pleading'; its response, 'by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" *Saldana v. Kmart Corp.,* 260 F.3d 228, 232, 43 V.I. 361 (3d Cir. 2001) (quoting Fed. R. Civ. P. 56(e)); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

## DISCUSSION

As an initial matter, the Court notes that Count I of the Amended Complaint asserts solely a violation of 42 U.S.C. § 1983. However, as the Supreme Court has "said many times, § 1983 'is **[*7]** not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights already conferred.'" *Graham v. Connor,* 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)). Accordingly, Count I fails to state a claim and must be dismissed.

In Count II, Plaintiff claims that Defendant Roth's failure to protect him from the assault amounts to cruel and unusual punishment in violation of the Eighth Amendment. (Am. Compl. P 27). However, as the Third Circuit has stated, "the Fourteenth Amendment provides the standard for evaluating the constitutionally protected interests of individuals who have been involuntarily committed to a state facility." *Rivera v. Rogers,* 224 Fed. Appx. 148, 150 (3d Cir. 2007) (citing *Youngberg v. Romeo,* 457 U.S. 307, 312, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982)). Thus, this Court will construe Count II as a § 1983 claim alleging a violation of Plaintiff's substantive due process rights under the Fourteenth Amendment.

To state a claim for relief under § 1983, a plaintiff must show the violation of a right secured by the Constitution or laws of the United States and that the deprivation was committed or caused by a person acting under color **[*8]** of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). Here, it is undisputed that Defendant Roth is a state actor. The only question is whether there is a genuine issue of material fact as to whether Dr. Roth's conduct, as alleged by Plaintiff, deprived Plaintiff of his rights under the Fourteenth Amendment.

Although state officials generally do not have an affirmative duty to protect citizens from injury by private parties, "[o]nce the state restrains an individual's liberty, rendering that individual unable to act for himself, … the state does acquire an affirmative duty to protect." *Shaw v. Strackhouse,* 920 F.2d

1135, 1144 (3d Cir. 1990) (citing *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989)). "The degree of affirmative care expected of state officials may vary with the type of physical custody involved." *Shaw,* 920 F.2d at 1144.

The parties' briefs demonstrate that there is some confusion as to the appropriate standard to apply in this case. Plaintiff argues that the proper standard is whether Defendant's action "shocks the conscience[,]" a standard which depends on the facts of the case. (Pl. Opp. at 8). Plaintiff then describes the Eighth Amendment deliberate **[*9]** indifference standard, explaining that this standard "has also been applied in due process claims" under the Fourteenth Amendment. (*Id.*). Plaintiff also cites the professional judgment standard laid out in *Youngberg v. Romeo,* 457 U.S. 307, 321, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982).

Similarly, Defendants discuss several different standards to apply in this case. First, Defendants note that "the deliberate indifference standard applied in analyzing a Fourteenth Amendment substantive due process claim is also used to analyze Eighth Amendment claims." (Def. Motion at 13, n.5). Then Defendants discuss the *Youngberg* professional judgment standard, explaining that "[f]or liability to attach, Plaintiff has to show more than mere negligence." (*Id.* at 14). Next, Defendants state that "liability attaches only to executive action that is so ill-conceived or malicious that it shocks the conscience." (*Id.* at 14-15) (internal quotations omitted). Finally, Defendants come full circle, explaining that "courts have employed the deliberate indifference standard in analyzing substantive due process claims of failing to protect from harm those involuntarily in State custody." (*Id.* at 15). In an attempt to clarify, Defendants claim that **[*10]** "[i]n *Ninci,* [sic] [*Nicini v. Morra,* 212 F.3d 798 (3d Cir. 2000)] the Third Circuit suggested that the professional judgment standard is essentially the same as the deliberate indifference test." (*Id.* at 15, n.6).

Despite the confusion among the parties, the Court finds that the proper standard was clearly set forth by the Third Circuit in *Shaw v. Strackhouse,* 920 F.2d 1135, 1145-46 (3d Cir. 1990). There, the Third Circuit explicitly rejected the deliberate indifference standard and held that the *professional judgment standard* applies to all failure to protect claims brought by institutionalized mental patients:

> [g]iven *Youngberg's* unambiguous rejection of the deliberate indifference standard in the context of involuntarily institutionalized retarded citizens, the district court's application of the deliberate indifference standard to Shaw's claims would appear to be incorrect.
>
> …
>
> … we must read *Youngberg* at face value and apply the professional judgment standard to all failure to protect … claims brought by mentally retarded persons who are institutionalized…

*Id.* Accordingly, the proper standard to apply in this case is the professional judgment standard.

Furthermore, in *Shaw,* the Third **[*11]** Circuit explained the difference between the professional judgment standard and the deliberate indifference standard as follows:

> [t]he deliberate indifference standard requires a showing, in cases alleging that a state actor failed to provide adequate protection, that the state actor was recklessly indifferent, grossly negligent, or deliberately or intentionally indifferent. [citations omitted] In contrast, the professional judgement standard adopted by the Court requires only that a plaintiff show that "[a] decision … is … a substantial departure from accepted professional judgment, practice, or standards." *Youngberg,* 457 U.S. at 323.

*Id.* at 1145. Thus, this Court must examine the evidence to determine whether Defendant Roth's failure to protect Plaintiff from the assault by Brandon Harvey amounts to "a substantial departure from accepted professional judgment, practice, or standards." *Id.*

According to the allegations in the Amended Complaint, Plaintiff claims that the March 26th assault "was set up by officers working at AKFC because he entered into a disagreement with an officer a few days prior to the assault[,]" referring to the March 24th incident with Officer Fireall. (Am. Compl. **[*12]** PP 15-16). Plaintiff claims that he "notified Defendants Roth and Main that he was worried he was going to be attacked prior to the [March 26th] incident." (*Id.* P 18).

To support this allegation, Plaintiff cites his response to Defendants' Interrogatory Number 3[A], which states that "Plaintiff cannot give an exact date and time, but he informed Dr. Roth when he went for rounds that he was worried that he was going to be attacked because Brandon Harvey was a known gang member." (Pl. Opp., Ex. 4 at 5). Plaintiff also cites a notation in his progress notes from March 18th, which states that Plaintiff's attorney called to report that Plaintiff was concerned about an attack

"because a patient on [his] unit was a patient [with] him at Ancora and there was a serious physical altercation between the two." (Pl. Opp., Ex. 2).

However, the Court finds that neither the interrogatory response nor the note regarding the attorney's call supports Plaintiff's allegation as set forth in the Amended Complaint; rather, this evidence appears to set forth new theories not alleged in the Amended Complaint. The Amended Complaint clearly states that Plaintiff was concerned about an attack "as a result of th[e] **[*13]** incident [with Officer Fireall]." (Am. Compl. P 17). Neither Plaintiff's concern about Brandon Harvey's alleged gang membership nor his concern about a previous unidentified Ancora patient supports his alleged claim relating to Officer Fireall.

Plaintiff, however, did not seek leave to amend his Amended Complaint to add these new theories. He may not amend a complaint through his briefs to the Court. *See Bell v. City of Philadelphia,* 275 Fed. Appx. 157, 2008 U.S. App. LEXIS 8896, 2008 WL 1813163 at *2 (3d Cir. 2008) ("[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment") (internal quotations omitted); *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988).

With respect to Plaintiff's sole claim, Plaintiff has not offered *any* evidence to show that he told Dr. Roth he was concerned about a retaliatory attack based on the incident with Officer Fireall. The record before this Court is devoid of any such evidence. In short, Plaintiff has failed to present any evidence to support the claim he alleged in the Amended Complaint.

By contrast, Defendants have submitted evidence to show that Plaintiff never informed Dr. Roth of his concern regarding **[*14]** Officer Fireall. In his affidavit, Dr. Roth explained that it is his custom and practice to document his contacts with patients by making a note about the interaction in the patient's progress notes. (Roth Aff. P 6). The progress notes show that Dr. Roth interacted with Plaintiff on March 24, 2004 at 9:00 a.m. and again on March 30, 2004 at 1:00 p.m. (*Id.* P 7, Ex. A). There are no notes indicating that Dr. Roth had any interaction with Plaintiff between those times. The record is clear that the incident with Officer Fireall occurred on the evening of March 24, around 5:20 p.m., and the assault by Brandon Harvey occurred on March 26. Because both the incident with Officer Fireall and the assault occurred in between Plaintiff's interactions with Dr. Roth, as documented, there was no occasion for Plaintiff to tell Dr. Roth of his concerns regarding Officer Fireall. Plaintiff fails to offer any explanation, in any evidentiary form, as to how he could have informed Dr. Roth of this specific concern.

As the Supreme Court recently held, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court **[*15]** should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (April 30, 2007). Here, Plaintiff's allegations are "so utterly discredited by the record that no reasonable jury could have believed him." *Id.* This Court cannot rely "on such visible fiction" and must base its decision on the evidence presented in the record. *Id.*

As discussed above, the record contains no evidence that Plaintiff informed Dr. Roth that he feared assault based on the incident with Officer Fireall. Rather, the progress notes show that Dr. Roth had no interaction with Plaintiff during the relevant time period. Given this evidence coupled with Plaintiff's utter failure to offer anything beyond his own non-specific allegations to dispute this evidence, the Court can find no genuine issue of fact warranting trial.

Furthermore, the record before this Court demonstrates that without any knowledge of the incident with Officer Fireall, there was no reason for Dr. Roth to suspect that Officer Fireall would orchestrate an attack on Plaintiff. As such, this Court finds that Dr. Roth's failure to protect Plaintiff from the assault by Brandon Harvey **[*16]** does not amount to "a substantial departure from accepted professional judgment, practice, or standards." *Shaw,* 920 F.2d at 1145. Dr. Roth is therefore entitled to summary judgment on Plaintiff's Fourteenth Amendment claim. Cf. *Shaw,* 920 F.2d at 1149 (where doctor knew that patient had previously been attacked, factual issue remained as to whether doctor's failure to protect patient constituted a failure to exercise professional judgment).

Even if the Court were to find that Plaintiff's only evidence - that is, his interrogatory response and the note from the attorney's call - was relevant to his claim in the Amended Complaint, such evidence is insufficient to defeat summary judgment here. First, Plaintiff's interrogatory response is vague and more akin to an allegation. It offers no specific date, time, or description of circumstances (e.g., who was present). Such vagueness does not afford an opposing party an opportunity to rebut the allegation. Additionally, because the interrogatory response is so vague, it is capable of different interpretations. For example, although it explains why Plaintiff was worried, the response does not necessarily indicate that Plaintiff gave that explanation **[*17]** to Dr. Roth. This is the type of vagueness that cannot be used to defeat summary judgment. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana,* 260 F.3d at 232.

As to the note regarding the attorney's call, it suffers from the same vagueness. The note fails to identify the particular individual that concerned Plaintiff at the time his attorney called. Moreover, Plaintiff offers no evidence whatsoever to show that the individual referred to in the note was indeed Brandon Harvey.

https://advance.lexis.com/documentprint/documentprintclick/?pdmfid=1000516&crid=33ac581d-ba7f-45cd-956e-d82494675227&ecomp=5g85k&prid=b48a4827-9bfa-

Thus, even if relevant to Plaintiff's claim as alleged in the Amended Complaint, the note was too general to put Dr. Roth on notice that Plaintiff faced a sincere threat as to a specific individual. 1⬇

Finally, even if the Court found that Plaintiff had offered sufficient evidence to withstand summary judgment, Defendant Roth would be entitled to qualified immunity. To determine whether a defendant is entitled to qualified immunity, the Court must "first decide whether the facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation. If so, the court next determines whether the constitutional right in question was clearly established." *Couden v. Duffy,* 446 F.3d 483, 492 (3d Cir. 2005) (internal citations omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [state official] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

As discussed in detail above, the Court holds that the facts **[\*19]** in this case, taken in a light most favorable to Plaintiff, do not demonstrate a constitutional violation. Even if the Court found otherwise, Defendant Roth would still be entitled to qualified immunity because he acted reasonably in the situation presented to him. Being told by a patient diagnosed with paranoid schizophrenia that he feared a security officer was going to incite another unidentified resident to assault him in retaliation for a dispute over a food tray would not put a reasonable state psychiatrist on notice that the patient faced a serious threat and needed additional protection. Thus, Dr. Roth is entitled to qualified immunity.

Based on the above reasoning, summary judgment is appropriate as to Plaintiff's § 1983 claim against Dr. Roth. Furthermore, for the same reasons Plaintiff's federal constitutional claim fails, Plaintiff's claim under the New Jersey state constitution (Count III) must also fail.

**CONCLUSION**

For the aforementioned reasons, this Court holds that all Defendants are entitled to summary judgment on all claims. An appropriate Order will issue this date.

Dated: *August 13, 2008*

/s/ Renee Marie Bumb ▼

RENEE MARIE BUMB ▼

UNITED STATES DISTRICT JUDGE

---

**Footnotes**

---

1⬆　The Court notes that Dr. Roth testified at his deposition that he "would have" reviewed the note regarding the attorney's call, discussed it with both Plaintiff and the other patient involved, and separated the two patients if necessary. (Roth Dep. 43:1-15). The record does not contain any evidence as to whether Plaintiff was actually separated from the individual referred to in the note (assuming Plaintiff ever identified the individual). **[\*18]** Nonetheless, Dr. Roth's testimony demonstrates that such decision would have been based on Dr. Roth's discussion with Plaintiff and evaluation of "the reality of the situation." (*Id.* at 52:18-22). This type of decision-making policy clearly satisfies the professional judgment standard set forth in Shaw. *Shaw,* 920 F.2d at 1145.

**Content Type:** Cases

**Terms:** Wood v. Main, 2008 U.S. Dist. LEXIS 62216 (D. N.J. August 13, 2008

**Narrow By:** -None-

**Date and Time:** Apr 12, 2018   11:05:18 a.m. EDT



About LexisNexis®

Privacy Policy

Terms & Conditions

Sign Out

Copyright © 2018 LexisNexis. All rights reserved.

