UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MACK TYLER, | : |
| Plaintiff, | : Civ. No. 15-2951 (FLW) (TJB) |
| v. | : |
| JACQUELINE CRUZ et al., | : **OPINION** |
| Defendants. | : |

**FREDA L. WOLFSON, U.S.D.J.**

## I. INTRODUCTION

Plaintiff, Mack Tyler ("Tyler" or "Plaintiff"), is proceeding *pro se* with a complaint alleging claims for civil rights violations, under 42 U.S.C. § 1983. (Compl., ECF No. 1.) Presently before the Court is an unopposed motion by defendants Evan Feibusch ("Feibusch"), Teresa McQuaide ("McQuaide"), and Bruce Booth ("Booth") (collectively, "Movants"),[1] for summary judgment under Federal Rule of Civil Procedure 56. (Mot., ECF No. 48.) For the following reasons, the motion is GRANTED insofar as summary judgment is granted to

---

[1] The motion also purports to be on behalf of named defendant Sandra Bryant ("Bryant"). (*See* ECF No. 48.) In the Court's prior Opinion and Order resolving a dismissal motion, all claims against Bryant were dismissed without prejudice. In addition to arguments seeking summary judgment in favor of Feibusch, McQuaide, and Booth, the motion presently pending also argues that, as Tyler made no attempt to amend his claims against Bryant, his claims against her must again be dismissed. As Bryant is no longer an active party to this litigation, it is unclear what basis she has to move the Court for relief. *See, e.g.*, *Silva v. Mid Atl. Mgm't Corp.*, 277 F. Supp. 2d 460, 463 n.1 (E.D. Pa. 2003). Furthermore, the relief she seeks is entirely redundant; she asks the Court to again dismiss the claims against her for the same reasons such claims were previously dismissed. (*See* ECF No. 48 at 9–10.) Accordingly, these portions of the motion are moot and not properly before the Court. I note, however, that, despite the prior dismissal of the claims against her, Bryant remains erroneously listed as an active defendant on the action's electronic docket. I will direct the Clerk to terminate Bryant as a defendant in conformance with the Order dismissing all claims against her.

Movants. Furthermore, Tyler shall show cause within 45 days why his claims as against the other defendants, Jacqueline Cruz, Lawrence Rossi, Lee Acuff, Maria Champagne, Karen Johnson, and John Does and Jane Does 1–19 (collectively, "the Unserved Defendants") should not be dismissed for his failure to effect timely service.

## II. BACKGROUND

### A. Underlying Facts[2]

In December 2011, Tyler was civilly committed to Trenton Psychiatric Hospital ("TPH") under *State v. Krol*, 344 A.2d 289 (N.J. 1975), and New Jersey Statutes Annotated § ("N.J.S.A.") 2C:4-8, after he was found not guilty of unspecified criminal charges by reason of insanity. (*See* Statement of Material Facts Not in Dispute, ECF No. 48-1 ¶ 2.) On December 26, 2011, another TPH patient, whom Movants refer to as "S.R.1," attacked Tyler while he was using a payphone. (*Id.* ¶ 3.) TPH staff intervened and took S.R.1 away to calm him down. (*Id.* ¶¶ 4–5.) Staff members apparently "counseled [S.R.1] about avoiding physical confrontation and released [him] under 1:1, direct supervision."[3] (*Id.* ¶ 6.) Tyler suffered injuries to his face and hand, which a TPH doctor classified as minor, and TPH staff administered Tyler a painkiller. (*Id.* ¶¶ 7–8.)

Three months later, on March 19, 2012, S.R.1 again attacked Tyler while they were in a restroom. (*Id.* ¶ 9.) S.R.1's one-to-one supervisor, Lloyd Mahi ("Mahi"), was present, and he subsequently stated that Tyler fought back against S.R.1 and that Mahi tried to stop the fight

---

[2] The summary judgment motion includes, as required by Local Civil Rule 56.1, a Statement of Material Facts Not in Dispute, including citations to evidentiary documents. (ECF No. 48-1.) As Tyler filed no opposition to the motion and no response to the Statement of Material Facts Not in Dispute, the facts recited therein are deemed undisputed. *See* L. Civ. R. 56.1(a).

[3] As Movants note, it seems that S.R.1 was already under one-to-one supervision at the time of the December 2011 attack and remained under such supervision at all relevant times. (*See* ECF No. 48-1 ¶¶ 6, 14 & n.2.)

2

while also calling for help. (*Id.* ¶¶ 10–11.) Another TPH employee arrived and helped separate the two patients, who were then "counseled to refrain from assaulting each other." (*Id.* ¶¶ 12–13.) Tyler again suffered injuries to his face and hand, which a TPH doctor deemed moderate,[4] and Tyler again received a painkiller. (*Id.* ¶¶ 15–16.) Tyler was released from TPH on May 14, 2014. (*Id.* ¶ 17.)

### B. Procedural History

On April 27, 2015, Tyler, acting *pro se*, filed a Complaint claiming that the failure by Defendants—all of whom are TPH administrators or employees—to prevent the attacks against him violated his rights under the Due Process Clause of the Fourteenth Amendment. (*See* ECF No. 1.) He alleged that, during the December attack, S.R.1's unidentified one-to-one supervisor "just stood there and watched" and "took no reasonable steps to . . . protect plaintiff." (*Id.* ¶ 15.) He also alleged that defendant Bryant and other staff were present, but "just watched until the incident was over." (*Id.* ¶ 16.) Tyler asserted that Feibusch, McQuaide, Rossi, and Acuff, all TPH administrators, were aware of S.R.1's violent propensities, as he had previously "assaulted approximately thirty to fifty different individuals and on numerous occasions the same persons and significantly causing bodily injuries ranging from broken bones to lacerations and other injuries, which required hospitalizations." (*Id.* ¶ 18.) Despite this, Tyler alleged that administrators failed to adequately treat S.R.1 and "turned a blind eye to his behavior." (*Id.* ¶¶ 19–20.) Tyler alleged that the March attack occurred because S.R.1's one-to-one supervisor

---

[4] The records attached to the motion seem to suggest that a TPH doctor in fact classified S.R.1's injuries stemming from this incident as moderate, but classified Tyler's injuries as only minor. (*See* Certif. of Meliha Arnautovic, Ex. F, ECF No. 45-10; *Id.*, Ex. I, ECF No. 45-13.) Nonetheless, the Court accepts Movants' representation in their Statement of Material Facts Not in Dispute.

3

"failed to check the bathroom to make sure no one was inside" and failed to intervene while the assault occurred. (*Id.* ¶ 23.)

The Complaint asserted one count against all Defendants for failure to protect Tyler from a known risk of harm in violation of his due-process rights, based on a failure to intervene and alleged failure to follow or enforce existing policies that would have provided protection. (*See id.* ¶¶ 24–39.) Tyler sought declarative relief, injunctive relief, and compensatory damages. (*Id.* ¶¶ 40–44.)

Although summonses were issued for all named Defendants, proper service was effected only upon Movants and Bryant; the summonses addressed to the Unserved Defendants were returned unexecuted. (*See* ECF Nos. 3, 6, & 7.) The docket bears no indication of any attempt by Tyler to locate or again attempt service on any of the Unserved Defendants.

Movants and Bryant first filed a motion to dismiss the Complaint for lack of subject-matter jurisdiction and for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(1) and (6). (*See* ECF No. 12.) After receiving no opposition to the motion, the Court ordered Tyler to provide notice of whether he intended to proceed with the action. (ECF No. 13.) Tyler thereafter opposed the dismissal motion. (ECF No. 14.)

On January 13, 2017, I issued an Opinion and Order granting in part and denying in part the dismissal motion. (ECF Nos. 17 & 18.) Specifically, I dismissed without prejudice Tyler's claims for injunctive relief as against all defendants, as he had been released from TPH and had not adequately pleaded a likelihood that he would be subjected to the same conditions again. (ECF No. 17 at 8–10.) I found that the moving defendants had failed to show that the Complaint should be barred as untimely, because New Jersey law tolls the applicable statute of limitations while a plaintiff is suffering from a mental disability that prevents commencing an action. (*Id.* at

4

10–13.) Furthermore, I held that Tyler had, at that early stage of the action, adequately pleaded claims for failure to protect against Feibusch, McQuaide, and Booth, but had failed to plead allege personal involvement by Bryant. (*Id.* at 13–22.) Accordingly, I dismissed the claims against Bryant without prejudice, but granted Tyler leave to file, within 45 days, an amended pleading stating a claim against her. (*Id.* at 22; ECF No. 18.)

Tyler never made any attempt to file an amended pleading. After Movants answered the Complaint, discovery was overseen by Magistrate Judge Tonianne J. Bongiovanni. On April 13, 2017, Judge Bongiovanni ordered Tyler to show cause why the action should not be dismissed due to his failure to appear for a required scheduling conference. (ECF No. 25.) Tyler apparently appeared for the required show-cause hearing and consented to electronic service, and Judge Bongiovanni set a discovery schedule requiring the parties to complete all fact discovery by October 31, 2017. (*See* ECF Nos. 26–28.) Judge Bongiovanni subsequently ordered Tyler to respond to all discovery requests, answer interrogatories and document requests, and serve his own discovery requests no later than August 13, 2017. (ECF No. 31.) Following a December 8, 2017, telephone conference with the parties, Judge Bongiovanni again ordered Tyler to provide responses to discovery requests, this time by December 15, 2017, and she further ordered Tyler to provide relevant HIPAA authorizations, warning that his failure to do so "may result in Plaintiff's inability to rely upon such treatment as a basis of damages." (*See* ECF No. 38.) Tyler apparently failed to provide any discovery responses or HIPAA authorizations, and, on January 12, 2018, based on Tyler's repeated failures to comply with orders concerning discovery, Judge Bongiovanni ordered that he was "precluded from producing and relying upon any information which has not already been produced." (ECF Nos. 40 & 41.)

On April 12, 2018, Movants filed a motion for summary judgment. (Mot., ECF No. 45.) Tyler never filed any response to that motion. The Court, however, denied the motion without prejudice, as Movants had failed to include with the motion a statement of undisputed material facts, as required by Local Civil Rule 56.1. (ECF No. 47.) Movants subsequently filed a proper motion for summary judgment, which is presently pending before the Court. (ECF No. 48.)

### III. THE MOTION FOR SUMMARY JUDGMENT

Movants now seek summary judgment as to the claims against them.[5] (*Id.*) Upon the motion's filing, a copy was transmitted to Tyler at the email address he provided the Court when he consented to receive documents electronically.[6] (*See* ECF Nos. 27 & Receipt for ECF No. 48.) Tyler has filed no opposition to the motion, nor any other subsequent communications with the Court.

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56 permits a court to award a party summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if supported by evidence such that a reasonable jury could return a verdict in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251–52 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Kaucher v. County of Bucks*, 455 F.3d 418, 422–23 (3d Cir. 2006). A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See Anderson*, 477 U.S. at 248;

---

[5] For the sake of clarity, Movants' arguments in support of summary judgment are discussed in conjunction with the analysis below.

[6] I note that Movants' counsel also certified that she had independently sent copies of the original summary judgment motion to Tyler by email, regular mail, and certified mail. (*See* ECF No. 45-1.) He did not file any response to that motion.

*Kaucher*, 455 F.3d at 423. In determining whether a genuine dispute of material fact exists, the Court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-movant]." *Matsushita*, 475 U.S. at 587.

A movant for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). While a defendant moving for summary judgment must support assertions by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), the movant is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim," *Celotex Corp.*, 477 U.S. at 323. Instead, "the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the movant has shown an absence of material factual dispute, the non-movant then bears the burden to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). Moreover, the non-movant may not rest upon the mere allegations or denials of the pleadings. *Id.* at 324; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994), *aff'd* 67 F.3d 291 (3d Cir. 1995). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A mere "scintilla of evidence . . . will be insufficient." *Anderson*, 477 U.S. at 252.

Local Civil Rule 56.1 requires that a motion seeking summary judgment include a statement of material facts not in dispute and that an opponent of summary judgment shall file "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." L. Civ. R.

56.1(a).  The rule further provides that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." *Id.*  Although a motion for summary judgment may not be granted by default, merely because it goes unopposed, *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990), the motion may be granted if the undisputed facts warrant judgment as a matter of law, *Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003); *Houston v. Township of Randolph*, 934 F. Supp. 2d 711, 723 (D.N.J. 2013), *aff'd* 559 F. App'x 139 (3d Cir. 2014).

Movants have submitted a Statement of Material Facts Not in Dispute that includes citations to relevant exhibits.  (*See* ECF No. 48-1.)  As Tyler has filed no response to the statement or the motion, despite ample opportunity to do so, the facts included in Movants' Statement of Material Facts Not in Dispute are deemed undisputed for the purposes of resolving this motion.  *See* L. Civ. R. 56.1.

**B. Substantive Legal Standards**

42 U.S.C. § 1983 is the statutory basis for asserting violations of a plaintiff's constitutional rights.  That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged

deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Generally, personal involvement by the defendant in the alleged constitutional violation is central to a § 1983 claim, and liability cannot rest on a theory of *respondeat superior*. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).

Tyler's Complaint asserts § 1983 claims for failure to protect under the Due Process Clause of the Fourteenth Amendment. (*See* ECF No. 1.) As I explained in my prior Opinion, "[s]tate officials generally do not have an affirmative duty to protect citizens not in their custody from injuries inflicted upon them by a third party." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1144 (3d Cir. 1990) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197–200 (1989)). "Once the state restrains an individual's liberty, rendering that individual unable to act for himself, however, the state does acquire an affirmative duty to protect." *Id.* As such, for involuntarily committed patients, the substantive Due Process Clause of the Fourteenth Amendment guarantees the right to personal security and the right to conditions of reasonable safety. *Youngberg v. Romeo*, 457 U.S. 307, 315, 324 (1982). In addition to reasonable safety and security, involuntarily committed individuals retain substantive liberty interests in adequate food, shelter, clothing, and medical care, as well freedom of movement and freedom from undue

9

restraint. *Id.* at 315, 317–19; *see also Fladger v. Trenton Psych. E. 2 Treatment Team*, Civ. A. Nos. 12-5982 (FLW) & 12-6419 (FLW), 2013 WL 3271018, at *5 (D.N.J. June 27, 2013).

Although the Supreme Court, in *Youngberg v. Romeo*, determined that an involuntarily committed individual "retains liberty interests in safety and freedom from bodily restraint" it found that these interests are "not absolute" and emphasized that the two interests conflict to some extent. 457 U.S. at 319–20. The Court explained,

> In operating an institution . . . , there are occasions in which it is necessary for the State to restrain the movement of residents—for example, to protect them as well as others from violence . . . . And an institution cannot protect its residents from all danger of violence if it is to permit them to have any freedom of movement. The question then is not simply whether a liberty interest has been infringed but whether the extent or nature of the restraint or lack of absolute safety is such as to violate due process.

*Id.* at 320.

The *Youngberg* Court adopted the standard for failure to protect that had been articulated by then-Chief Judge Collins J. Seitz of the Third Circuit, in his concurring opinion in the case below, stating,

> We think the standard articulated by Chief Judge Seitz affords the necessary guidance and reflects the proper balance between the legitimate interests of the State and the rights of the involuntarily committed to reasonable conditions of safety and freedom from unreasonable restraints. He would have held that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish. At the same time, this standard is lower than the "compelling" or "substantial" necessity tests the Court of Appeals would require a State to meet to justify use of restraints or conditions of less than absolute safety. We think this requirement would place an undue burden on the administration of institutions such as Pennhurst and also would

> restrict unnecessarily the exercise of professional judgment as to
> the needs of residents.

*Id.* at 321–22 (citations omitted). In interpreting *Youngberg*, the Third Circuit has emphasized that the professional-judgment standard requires proof of more than mere negligence. *See Shaw*, 920 F.2d at 1146–47 (citing *Daniels v. Williams*, 474 U.S. 327 (1986)). Instead, "[p]rofessional judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct." *Id.* at 1146; *see also Bullock v. Cabasa*, Civ. No. 10-1412 (RBK/KMW), 2014 WL 5286613, at *6 (D.N.J. Oct. 15, 2014).

In addition, the Third Circuit explained, "[T]he *Youngberg* Court did not apply the professional judgment standard to all those charged with caring for such individuals. The Court applied the standard only to 'professional decisionmakers,' . . . ." *Shaw*, 920 F.2d at 1147. The *Youngberg* Court defined professional decision makers as

> person[s] competent, whether by education, training or experience, to make the particular decision at issue. Long-term treatment decisions normally should be made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the retarded. Of course, day-to-day decisions regarding care—including decisions that must be made without delay—necessarily will be made in many instances by employees without formal training but who are subject to the supervision of qualified persons.

*Youngberg*, 457 U.S. at 323 n.30; *see also Shaw*, 920 F.2d at 1147. Thus, non-professional employees who provide care for involuntarily committed individuals are subject to the deliberate-indifference standard. *Shaw*, 920 F.2d at 1147. "The deliberate indifference standard requires a showing, in cases alleging that a state actor failed to provide adequate protection, that the state actor was recklessly indifferent, grossly negligent, or deliberately or intentionally indifferent." *Id.* at 1145 (citations omitted); *see also Brandt v. Rossi*, Civ. A. No. 11-2627 (FLW), 2012 WL 359736, at *5 (D.N.J. Feb. 2, 2012).

11

## C. Analysis

Movants argue that summary judgment is appropriate as Tyler has failed to produce any evidence supporting his claims. (ECF No. 48 at 10–15.) The Statement of Material Facts Not in Dispute, with citations to various documents produced during discovery, recites the following relevant facts:

1. At all relevant times, S.R.1 was under one-to-one supervision.
2. S.R.1 suddenly attacked Tyler on December 26, 2011.
3. TPH employees intervened in the attack and took S.R.1 to a quiet room to calm down.
4. After he had calmed down, TPH employees "counseled [S.R.1] about avoiding physical confrontation."
5. Tyler suffered minor injuries to his face and hand from the attack.
6. On March 19, 2012, S.R.1 entered a bathroom with his one-to-one supervisor, Mahi.
7. S.R.1 suddenly punched Tyler, who was also in the bathroom.
8. "[Tyler] fought back and [Mahi] tried to stop the fight while calling for help."
9. Another TPH employee "ran to help Mahi break up the fight."
10. Both Tyler and S.R.1 "were counseled to refrain from assaulting each other."
11. Tyler suffered moderate injuries to his face and hand from the attack.

(ECF No. 48-1 ¶¶ 3–16 & n.2; *see also* Certif. of Meliha Arnautovic, Exs. B–C, E–I, ECF Nos. 45-6 through 45-7, 45-9 through 45-13.) As explained above, the Court deems these facts undisputed for the purposes of this motion.

Success on his claims would require Tyler to prove that he suffered injuries caused either by a failure to exercise professional judgment on the part of professional defendants or by deliberate indifference on the part of non-professional defendants. *See Shaw*, 920 F.2d at 1144–

47. I held in my prior Opinion, resolving the dismissal motion, that Movants are "professionals" under *Youngberg*. (ECF No. 17 at 18.) Upon the undisputed facts and the evidence before the Court, there is no evidence of a failure to exercise professional judgment, whether affirmative conduct or passive failure to act, by any of these defendants. (*See* ECF No. 48-1.)

Indeed, there is no indication in the undisputed facts or evidence of any personal involvement in, or even knowledge of, the underlying circumstances by any of these defendants, which would be required for liability under § 1983. *See Chavarriaga*, 806 F.3d at 222. For instance, incident reports regarding the two attacks on Tyler list various TPH employees who were to receive notifications or email alerts of the incidents, but neither notification list includes Feibusch, McQuaide, Booth, or any of the other named defendants in this action. There is also no indication of a causal relationship between conduct by Movants and the harms suffered by Tyler. *See Shaw*, 920 F.2d at 1147 ("Only those defendants whose inactions or actions *personally caused* Shaw's injury may be held liable under § 1983. In more concrete terms, liability may only be imposed on those defendants who had the power and the responsibility to protect Shaw's safety . . . , but who failed to do so." (emphasis added)).

Accepting Movants' statement of material facts as undisputed, as the Court must under Local Civil Rule 56.1, there is no evidence of any failure to exercise professional judgment, or even of any personal involvement, by these defendants. As noted above, the Supreme Court has found that it is *not* required for a defendant seeking summary judgment to "produce evidence showing the absence of a genuine issue of material fact," and that a movant may meet the burden on a summary judgment motion "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Here, Movants meet that burden by pointing out to the Court that, despite the close of

discovery, Tyler has not produced or submitted any evidence supporting his claims against Movants. Accordingly, summary judgment must be granted as to the claims against Feibusch, McQuaide, and Booth.

I note that, in the Opinion denying dismissal as to these claims under Rule 12(b)(6), I found from the Complaint's allegations that "it [wa]s plausible that State Defendants Feibusch, McQuaide, and Booth had the power and the responsibility to protect Plaintiff's safety at Trenton Psychiatric Hospital, but failed to do so." (ECF No. 17 at 19 (internal quotation marks and brackets omitted).) Tyler's allegations alone are no longer sufficient to justify continued litigation for several reasons. First, the central question in resolving the dismissal motion was whether Tyler's Complaint adequately pleaded a plausible claim, and I concluded it had. (*See id.*) By contrast, the question presented on the instant motion for summary judgment is whether there is evidence raising a genuine issue of material fact requiring resolution by a factfinder. *See Anderson*, 477 U.S. at 248. In this case, there simply is not. Neither is there any indication that Tyler could subsequently introduce relevant evidence: he completely failed to participate in discovery in this action, and, as a result, was barred by Magistrate Judge Bongiovanni from relying on any evidence that had not already been produced. (*See* ECF No. 41.)

Furthermore, while I previously found that an inference of responsibility could be drawn from the Complaint's allegations as to Movants, such an inference is not enough to save the Complaint from summary judgment. On a summary judgment motion, the non-movant may not rest upon the mere allegations or denials of the pleadings. *See Celotex Corp.*, 477 U.S. at 324.

Finally, in denying the prior dismissal motion as to Movants, I observed that dismissal was not warranted on the basis that Tyler had alleged only a general failure to act by the defendants, rather than identifying specific decisions causing him harm. (*See* ECF No. 17 at 19.)

I noted that the Third Circuit, in *Shaw*, had reversed a grant of summary judgment to several professional defendants despite the plaintiff's failure to show specific professional decisions that led to his harm, instead "'cast[ing] a broad net over potentially responsible parties.'" (ECF No. 17 at 19–20 (quoting *Shaw*, 920 F.2d at 1147–48).) The *Shaw* Court further explained,

> Identification of a responsible party or parties with a complex, overlapping chain of command is often a difficult task. Numerous variables must be factored into the analysis: the amount of information known to various defendants; the scope of their duties and authority; their training and expertise; the allocation of decisionmaking power within the organization; reporting and review relationships; established formal decisionmaking procedures; and informal custom and practice.

*Shaw*, 920 F.2d at 1149–50.

But the posture of Tyler's claim is distinguishable from that considered by the Third Circuit in *Shaw*. That Court noted, "[a]fter reviewing the record in some detail," that Shaw had produced enough evidence to survive summary judgment as to seven defendants, but it granted summary judgment to seven other defendants because "[t]he record fails to raise a genuine issue of material fact as regards the exercise of professional judgment by the remaining seven professional defendants." *Id.* at 1148. As to the defendants to whom summary judgment was denied, Shaw had introduced evidence that they, variously, had borne active roles in failing to prevent subsequent harm: by examining Shaw's injuries yet failing to alter security procedures; by investigating and actively discussing the incident involving Shaw; by being "made aware of Shaw's injury"; by bearing the responsibility to convene a team meeting concerning Shaw's injury, yet failing to do so; and by failing to enact any protective measures despite an investigation revealing the likelihood that a staff member had assaulted Shaw. Despite ample opportunity to take discovery, however, Tyler has not produced evidence that any professional defendants were even aware of S.R.1's assaults on him, much less that they shirked a

responsibility to prevent future attacks. In sum, Tyler's case against Movants resembles the case by Shaw against the seven defendants whose grants of summary judgment were affirmed by the *Shaw* Court, not those for whom summary judgment was reversed by the Third Circuit. For these reasons, summary judgment is granted in favor of Movants.

## IV. THE UNSERVED DEFENDANTS

With summary judgment granted to Movants, the only remaining defendants are the Unserved Defendants. Proof of service has never been filed with the Court as to any of them. Pursuant to Federal Rule of Civil Procedure 4, "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Thus, the claims against the Unserved Defendants appear ripe for dismissal. *See Manuel v. Atkins*, 545 F. App'x 91, 95 (3d Cir. 2013) ("[T]he District Court properly dismissed all claims against John Doe, as Manuel failed to serve John Doe within the 120 day[7] service period . . . ." (footnote added)). Accordingly, the Court orders Tyler to show cause within 30 days why his claims against the Unserved Defendants should not be dismissed for failure to make timely service.

## CONCLUSION

For the foregoing reasons, the unopposed motion for summary judgment by Feibusch, McQuaide, and Booth, (ECF No. 48), is GRANTED. The portion of the motion seeking dismissal of the previously dismissed claims against Bryant are denied as moot and as not properly before the Court. Tyler shall show cause within 45 days why his claims against the Unserved Defendants—Jacqueline Cruz, Lawrence Rossi, Lee Acuff, Maria Champagne, Karen

---

[7] The Court notes that the presumptive time for service under Rule 4 was shortened from 120 days to 90 days by a 2015 amendment.

16

Johnson, and John Does and Jane Does 1–19—should not be dismissed for failure to effect timely service under Federal Rule of Civil Procedure 4. If Tyler fails to take any action within 90 days, the case will be dismissed for lack of prosecution under Local Civil Rule 41.1. An appropriate order follows.


DATED: March 13, 2019                               /s/ Freda L. Wolfson
                                                    FREDA L. WOLFSON
                                                    United States District Judge